Lonnie Ray NORMAN, Petitioner-Appellant,

v.

O.L. McCOTTER, Director, Texas Department of Corrections, Respondent-Appellee.

No. 84–2579.

Summary Calendar.

United States Court of Appeals, Fifth Circuit.

July 15, 1985.

Lonnie R. Norman, pro se.

Hon. Joe Mattox, Atty. Gen., William C. Zapalac, Asst. Atty. Gen., Austin, Tex., for respondent-appellee.

Before RUBIN, RANDALL, and TATE, Circuit Judges.

TATE, Circuit Judge:

Lonnie Ray Norman, a state prisoner, appeals pro se from the district court's denial of his application for a writ of habeas corpus. *See* 28 U.S.C. § 2254. Norman contends on appeal that he is entitled to relief on three separate grounds, all of which the district court rejected: (1) because his indictment was fundamentally defective, (2) because he received ineffective assistance of counsel that rendered his guilty plea unknowing and involuntary, and (3) because his conviction was based on an illegal arrest and an illegal search and seizure. Norman also contends that the district court erred by converting the government's motion to dismiss the petition into a motion for summary judgment and by granting the motion without giving him ten days notice and an opportunity to respond. While we find merit to the latter contention, under the present circumstances the error was harmless. Finding no reversible error, we affirm.

### I. *Background*

In late 1981, Norman was charged in a two-count indictment with having committed aggravated robbery and aggravated rape on September 26, 1981. Prior to trial, the state dismissed the aggravated robbery charge in return for Norman's agreement to enter a plea of nolo contendere to the charge of aggravated rape. After Norman entered his plea, the trial court accepted it, found him guilty as charged, and sentenced him to thirty-five years imprisonment in the Texas Department of Corrections. Norman did not appeal his conviction, but he did file two applications for state habeas corpus relief. Both were denied by the Texas Court of Criminal Appeals without written order.

Having exhausted his state court remedies, Norman filed an application for federal habeas corpus relief in the district court in early 1983. In response, the state filed an answer, the state court records, and a motion to dismiss the petition. Norman then filed a traverse. Subsequently, the district court converted the state's motion to dismiss into a motion for summary judgment and, without giving Norman any notice or an opportunity to respond, granted the motion. This appeal followed.

### II. *The Procedural Error*

Norman's first contention is that the district court erred by treating the state's motion to dismiss as a motion for summary judgment and by granting the motion without giving him ten days notice and an opportunity to respond, as required by Rules

12(b) and 56(c) of the Federal Rules of Civil Procedure.[1] In response, the state argues that Rule 56(c) does not apply in this case but that the district court nonetheless properly granted summary judgment under Rule 8(a) of the Rules governing Section 2254 cases in the United States District Courts ("Habeas Rules"), which on its face does not require notice or an opportunity to respond when a district court determines that no evidentiary hearing is required for the disposition.[2]

Here, however, the district court specifically converted the state's motion to dismiss into a motion for summary judgment, without prior notice to the habeas petitioner, and it granted summary judgment on the basis of the state's factual showing, which the habeas petitioner had not been by notice given an opportunity to controvert.

■ Fed.R.Civ.P. 81(a)(2) specifically provides that the Federal Rules of Civil Procedure apply to habeas proceedings "to the extent that the practice in such proceedings is not set forth in statutes of the United States," while Habeas Rule 11 provides that "[t]he Federal Rules of Civil Procedure, to the extent they are not inconsistent with these [habeas] rules, may be applied, where appropriate, to petitions filed under these [habeas] rules." Having determined that the state's motion to dismiss should be treated as a motion for summary judgment under Fed.R.Civ.P. 56 on the basis of matters outside the pleadings (*i.e.*, the (controvertible) factual showing made by one party), the district court was likewise required to give "reasonable opportunity to present all material made

pertinent to such motion [for summary judgment] by Rule 56," Fed.R.Civ.P. 12(b). This would normally require notice to the opponent and a reasonable opportunity to respond by controverting factual showing before the decision on the motion to dismiss, now newly-characterized as a motion for summary judgment. Fed.R.Civ.P. 56(c); *Murphy v. Inexco Oil Company*, 611 F.2d 570, 573 (5th Cir.1980); 5 Wright & Miller, Federal Practice and Procedure, § 1366 at p. 683 (1969).

■ Habeas Rule 8(a) (quoted in note 2 *supra*) authorizes the trial judge to dispense with an evidentiary hearing, if unnecessary, and then to "make such disposition of the petition as justice shall require." We do not read this rule, as the state would have us, to provide that Rule 8(a) authorizes a grant of summary judgment under Fed.R.Civ.P. 56 on the basis of the non-pleading factual showing of one party, without notice to the other and an opportunity by him to respond by controverting factual showing.

Nor do the decisions relied upon by the state, *Jones v. Estelle*, 692 F.2d 380 (5th Cir.1982) and *McDonnell v. Estelle*, 666 F.2d 246 (5th Cir.1982), support its contention. The decisions established the framework for summary disposition of petitions under Habeas Rule 9(a) ("Delayed petitions") and Habeas Rule 9(b) ("Successive petitions"). Insofar as pertinent to the present issue, both decisions hold, consistent with our reasoning above, that summary disposition in a habeas proceeding that resolves factual issues by grant of summary judgment under Fed.R.Civ.P. 56 will require that the trial court grant to the oppo-

---

**1.** Rule 56(c) provides, in pertinent part:
  The motion [for summary judgment] shall be served at least 10 days before the time fixed for the hearing. The adverse party prior to the day of the hearing may serve opposing affidavits. The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

**2.** 28 U.S.C. § 2254, Habeas Rule 8(a), provides:
  If the [habeas] petition is not dismissed at a previous stage in the proceeding, the judge after the answer and the transcript and record of state court proceedings are filed shall, upon a review of those proceedings and of the expanded record, if any, determine whether an evidentiary hearing is required. If it appears that an evidentiary hearing is not required, the judge shall make such disposition of the petition as justice shall require.

nent notice and a reasonable opportunity to respond, before such summary disposition may be accorded. *Jones,* 692 F.2d at 384, 386; *McDonnell,* 662 F.2d at 250, 252.

▪ Nevertheless, under the present circumstances the error was harmless. By his affidavit filed in this court,[3] the petitioner Norman has fully informed us of the factual issues he desired to raise had he been given proper notice and an opportunity to respond before the summary judgment that dismissed his claim; and this affidavit failed to establish the existence of disputed material facts, see Part IV of this opinion. In other words, even when we view the facts in the light most favorable to Norman, as must be done on a motion for summary judgment, *Galindo v. Precision American Corporation,* 754 F.2d 1212, 1216 (5th Cir.1985), Norman still cannot make the requisite showing to survive the motion.

Thus, the district court's failure to give sufficient notice and an opportunity to respond, assuming both were required, was harmless error. *See Chicago-Midwest Meat Association v. City of Evanston,* 589 F.2d 278, 282 (7th Cir.1979) (Wisdom, J., sitting by designation). The cited decision affirmed the grant of summary judgment by the district court, despite (as here) its improvidence because no notice and opportunity was given the opponent to establish material controverted facts. It did so because, assuming the existence of the facts alleged by the opponent before the appellate court, disposition by summary judgment was proper.

### III. *The Indictment*

Norman's second contention is that he is entitled to habeas corpus relief because his indictment is fundamentally defective. The pertinent part of the indictment provides that Norman raped his victim and "by acts, words, and deeds occurring in the presence of the [victim] ... did intentionally and knowingly threaten to cause serious bodily injury and death to be inflicted on the

[victim]." Norman contends the indictment is fundamentally defective because it fails to allege that he placed his victim in fear of "imminent" bodily injury or death.

In support of this contention, Norman relies on Tex.Penal Code Ann. § 21.03(a)(2) (Vernon 1974) (emphasis added), which provides:

(a) A person commits an offense if he commits rape as defined in Section 21.02 of this code ... and he:

(2) compels submission to the rape by threat of death, serious bodily injury, or kidnapping to be *imminently* inflicted on anyone.

Had this provision been in effect when Norman allegedly committed the rape, on September 26, 1981, the indictment would have been "fundamentally defective". *See McDaniel v. State,* 642 S.W.2d 785, 786 (Tex.Cr.App.1983) (indictment "fundamentally defective for failure to allege that the threatened harm was to be imminently inflicted"); *Garcia v. Dial,* 596 S.W.2d 524, 527 (Tex.Cr.App.1980) ("valid indictment ... is essential to the district court's jurisdiction in a criminal case"). *But see* note 5 *infra,* citing Texas decisional-law that such a "fundamentally defective" indictment nevertheless, if not timely attacked before conviction, is sufficient to confer jurisdiction on the Texas state court and is not subject to collateral attack by habeas proceedings.

▪ In 1981, however, the Texas legislature amended § 21.03 of the Texas Penal Code. *See* 1981 Tex.Sess.Law Serv. 471 (Vernon). The amendments redefining aggravated rape became effective on September 1, 1981, and thus apply to Norman's alleged offense. The pertinent amendment provides:

(a) A person commits an offense if he commits rape as defined in Section 21.02 of this code ... and he:

\*　　\*　　\*　　\*　　\*　　\*

(3) *by acts, words, or deeds occurring in the presence of the victim threat-*

---

**3.** We shall consider Norman's delinquent affidavit on appeal only because he is a pro se petitioner and only because he reasonably claims he would have submitted it to the district court had he been notified that the state's motion was going to be treated as a motion for summary judgment.

*ens to cause death, serious bodily injury, or kidnapping to be inflicted on anyone.*

Tex.Penal Code Ann. § 21.03(a)(2) & (3) (Vernon Supp.1982) (emphasis supplied).[4] As amended, § 21.03(a)(3) does not require that the aggravated-rape offender threaten his victim with "imminent" harm, only that (as charged by Norman's indictment) he threatened serious bodily injury or death in the presence of the victim. Norman's indictment was thus not defective. *See Harris v. State,* 666 S.W.2d 537, 539 (Tex. App.3d Dist.1984).[5]

In this circuit, " 'the sufficiency of a state indictment is not a matter for federal habeas corpus relief unless it can be shown that the indictment is so defective that the convicting court had no jurisdiction.' " *Liner v. Phelps,* 731 F.2d 1201, 1203 (5th Cir.1984) (*quoting Branch v. Estelle,* 631 F.2d 1229, 1233 (5th Cir.1980)). For reasons stated, Norman's indictment did not meet this threshold requirement for federal habeas relief with regard to his defective indictment claim.

## IV. *The Effective Assistance of Counsel and the Guilty Plea*

Norman's third contention is that he is entitled to federal habeas corpus relief because he received ineffective assistance of counsel that rendered his guilty plea unknowing and involuntary. In particular, Norman alleges in his affidavit that his attorney told him prior to trial (1) that the indictment was fundamentally defective, (2) that, if this were brought to the prosecutor's attention before entry of the guilty plea, the prosecutor would simply have the defective indictment dismissed and secure a new, satisfactory indictment, (3) that Norman should enter a guilty plea, serve a short time in prison, and challenge the sufficiency of the indictment in an application for habeas corpus relief, and (4) that, in doing so, he would be better off because the state, rather than seek a new indictment and go through a second trial, would allow him to plead guilty to time served.[6] Norman contends that he took a calculated risk in entering the guilty plea and that, had he known he was waiving his right to challenge the indictment in doing so, he would have opted to stand trial. For this reason, Norman maintains, the legal assistance he received was so ineffective that it rendered his guilty plea unknowing and involuntary.[7]

We have on several occasions articulated the proper standard in this circuit for deter-

---

4. This statute was amended again, in ways not pertinent here, in 1983. *See* Tex. Penal Code Ann. §§ 21.03 & 22.021 (Vernon Supp.1985).

5. Additionally, we note that, even if the 1981 amendments did not apply to Norman, a fundamentally defective rape indictment is not void *ab initio* under Texas law. *See Ex Parte Roberts,* 502 S.W.2d 802, 803 (Tex.Cr.App.1974). Such an indictment is deemed to be valid and the district court is deemed to have jurisdiction if the defendant charged in the indictment fails to object to it in the trial court, fails to appeal his conviction, and simply waits to challenge the sufficiency of the indictment in a habeas petition. *Id.* In such a case, the defendant "has clearly waived his right to challenge [the] defective indictment." *Id. See generally* 2 LaFave and Isreal, *Criminal Procedure* § 20.6 (1984).

6. Norman's attorney, in an affidavit submitted to the state trial court, describes the exchange somewhat differently: "Possible flaws in the indictment were discussed with Lonnie [Norman] including the fact that a fundamentally defective indictment could be attacked at a later time (post conviction). The possibility of rein-

dictment was also discussed with Lonnie." (Barksdale Affidavit, State Court Records, p. 23).

7. The Supreme Court has stated that a plea of guilty is tantamount to a conviction, *Boykin v. Alabama,* 395 U.S. 238, 242, 89 S.Ct. 1709, 1711, 23 L.Ed.2d 274 (1969), and " 'must stand unless induced by threats (or promises to discontinue improper harassment), misrepresentation (including unfulfilled or unfulfillable promises), or perhaps by promises that are by their very nature improper as having no proper relationship to the prosecutor's business (*e.g.,* bribes).' " *Brady v. United States,* 397 U.S. 742, 755, 90 S.Ct. 1463, 1472, 25 L.Ed.2d 747 (1970) (quoting *Shelton v. United States,* 246 F.2d 571, 572 n. 2 (5th Cir.1957) (Tuttle, J.), *rev'd on confession of error on other grounds,* 356 U.S. 26, 78 S.Ct. 563, 2 L.Ed.2d 579 (1958)). In applying these requirements, we have stated:

[A guilty] plea must not only be entered voluntarily, but also knowingly and intelligently: the defendant must be aware of the relevant circumstances and the relevant consequences. If, however, a defendant un-

mining whether defense counsel has rendered reasonably effective assistance in the guilty plea context. Most recently, in affording post-conviction relief and vacating a conviction founded on a guilty plea, we stated in *United States v. Rumery,* 698 F.2d 764 (5th Cir.1983):

> It is the lawyer's duty to ascertain if the plea is entered voluntarily and knowingly. He must actually and substantially assist his client in deciding whether to plead guilty. It is his job to provide the accused an "understanding of the law in relation to the facts." The advice he gives need not be perfect, but it must be reasonably competent. His advice should permit the accused to make an informed and conscious choice. In other words, if the quality of counsel's service falls below a certain minimum level, the client's guilty plea cannot be knowing and voluntary because it will not represent an informed choice. And a lawyer who is not familiar with the facts and law relevant to his client's case cannot meet that required minimal level.

*Id.* at 766 (*quoting Herring v. Estelle,* 491 F.2d 125, 128 (5th Cir.1974).[8] *Rumery* is especially relevant here in that we held there that incompetent legal advice rendered the defendant's guilty plea unknowing and involuntary:

> In the case presently before the court, defendant was indicted on only one count, which provided a maximum potential incarceration of five years. Counsel erroneously advised defendant that he was charged with three separate counts and could receive a prison term of thirty years. This error constitutes ineffective assistance of counsel. Appellant's guilty plea, based as it was upon the erroneous expectation that it reduced his maximum potential sentence from thirty years to

five years, was not knowingly and intelligently made.

*Rumery, supra,* at 766.

We reached the same result in *Cooks v. United States,* 461 F.2d 530 (5th Cir.1972). In that habeas case, the defendant had been indicted on six counts of transporting forged securities in interstate commerce. Each count in the indictment carried a maximum prison term of ten years. Defense counsel persuaded the defendant to plead guilty to one count and face a maximum prison term of ten years rather than go to trial and face a maximum prison term of sixty years. Defense counsel failed to ascertain, however, that only one count in the indictment was valid with the remaining counts fatally infirm on their face. Thus, the maximum prison sentence the defendant could have received had he gone to trial was ten years, not (as advised) sixty years. On habeas review, we held that defense counsel's advice was so "patently erroneous" that the defendant's guilty plea was not knowing and voluntary and that the defendant was therefore entitled to withdraw his plea. *Id.* at 532.

In our view, both *Rumery* and *Cooks* are distinguishable from the present case. Unlike the defendant in each of those cases, Norman based his decision to plead guilty, not only on erroneous legal advice (that the indictment was fundamentally defective and could be challenged in a habeas corpus petition), but also on a highly speculative prediction (that he could expect the state to allow him to plead guilty to time served rather than to seek a new indictment and try the case again). Norman's own affidavit shows that he knew that if he followed his attorney's advice, the state might choose to try the case a second time. From the lawyer's advice, however, Norman also reasonably knew that, nevertheless, if he

---

derstands the nature of the charges against him and the consequences of his plea, yet voluntarily chooses to plead guilty, that plea should be upheld on federal review.
*Diaz v. Martin,* 718 F.2d 1372, 1376–77 (5th Cir.1983) (citations omitted). *See also Frank v. Blackburn,* 646 F.2d 873, 882 (5th Cir.1980) (en banc).

8. Since the result here would be the same under the Supreme Court's recent decision in *Strickland v. Washington,* —— U.S. ——, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), we need not consider the extent to which, if any, *Strickland* requires us to modify the *Rumery* standard.

waited for several years to challenge the sufficiency of the indictment, the state might equally well try him again and secure the same sentence as to which he was initially exposed. We cannot say, to quote from our opinion in *Cooks*, that "the misinformation here incorrectly led this defendant to believe he was *minimizing* his risk exposure by pleading guilty instead of facing a jury trial." *Cooks, supra*, 461 F.2d at 533 n. 3 (emphasis in original).

We are thus unable to hold that Norman's guilty plea was unknowing and involuntary in a constitutional sense. Accepting his factual showing, he was informed that the indictment was defective, but that, if he raised the defect instead of pleading guilty, the state could then cure it by a valid indictment. His lawyer's mistaken advice that he could as a practical ploy raise the invalidity by post-conviction attack and secure a new trial (and, most possibly, a lighter sentence) does not in our opinion deprive his plea of guilty to the indictment (believed by him to be technically invalid) into an unknowing and involuntary one. On the basis of the lawyer's mistaken advice, Norman pleaded guilty to the (believed by him invalid) indictment in the hope he could play games with the system by raising post-conviction the assumed indictment defect, but fully knowing that he would, if successful, be subject to the same trial and the same sentence as in the initial instance, if he did not plead guilty. This is generically different from the situation in *Rumery* and *Cooks*, where the mistaken legal advice induced the defendants, despite their claim of innocence, to plead guilty because of their fear that otherwise they might receive lengthy prison sentences to which, in fact, they were not legally exposed. We find no merit to Norman's third contention.

### V. *The Arrest and the Search and Seizure*

Norman's final contention is that he is entitled to habeas corpus relief because his conviction was based on an illegal arrest and an illegal search and seizure. We reject this contention. Illegal searches and seizures are non-jurisdictional defects that Norman waived his right to challenge when, as found above, he entered a knowing and voluntary guilty plea. *Id; United States v. Bell*, 457 F.2d 1231, 1234 n. 1 (5th Cir.1972).

### VI. *Conclusion*

For the foregoing reasons, we affirm the judgment of the district court denying Norman's application for a writ of habeas corpus.

AFFIRMED.